IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America,<br><br>v.<br><br>David Edwin Kohn, Jr. | Crim. No. 4:07-cr-00645-TLW<br><br>**Order** |

This matter is before the Court on Defendant David Edwin Kohn, Jr.'s motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 101. For the reasons set forth below, his motion is denied.

## BACKGROUND

On May 23, 2007, a federal grand jury returned an eleven count Indictment charging Defendant and his co-defendants with several robbery and firearm offenses. ECF No. 13. On September 4, 2007, Defendant pled guilty to two counts of brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). ECF Nos. 27, 30, 31. After the Court granted the Government's § 5K1.1 motion based on cooperation, Defendant was sentenced to a total aggregate sentence of 22 years and 10 months' imprisonment; 10 years as to Count 8 consecutive to 12 years and 10 months as to Count 11. ECF No. 58. BOP records reflect that his projected release date is July 24, 2025.

## APPLICABLE LAW

Absent certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides, in relevant part, as follows:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term
> of imprisonment . . . after considering the factors set forth in section
> 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons
> warrant such a reduction; . . . and that such a reduction is consistent
> with applicable policy statements issued by the Sentencing Commission
> . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But prior to the passage of the First Step Act, compassionate release motions could only be filed by the BOP, so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons

warranting a sentence reduction is a question reserved to the sound discretion of the district court.

## DISCUSSION

Defendant argues that a sentence reduction is appropriate for two reasons: 1) the First Step Act's elimination of "stacking" sentences pursuant to § 924(c) is extraordinary and compelling, and 2) his underlying medical condition in light of COVID-19 is extraordinary and compelling. As to the First Step Act's change to § 924(c), Defendant argues that if he were sentenced under current law, his sentence would be "dramatically reduced." ECF No. 101 at 3. As to his health condition and the impact of COVID-19, Defendant asserts that his "sickle cell trait diagnosis puts him at a great risk of harm if he were to contract a COVID-19 infection." *Id.* He asserts that he would be better positioned to social distance if released. *Id.* In his reply to the Government's response, he argues that that the § 3553(a) factors weigh in favor of release in light of the time he has already served and his rehabilitative efforts. ECF No. 105 at 3.

The Government opposes his motion, arguing that 1) Defendant has not identified an "extraordinary and compelling reason" for a sentence reduction and 2) the § 3553(a) factors "strongly weigh against Defendant's release." ECF No. 104 at 6-9. In support of its argument, the Government notes the serious and violent nature of Defendant's federal offense conduct (the instant offenses). *Id.* at 8-9.

In considering whether to reduce Defendant's sentence, the Court has carefully reviewed the Presentence Investigation Report (PSR) and has considered the

statutory penalties, the Guidelines range, applicable caselaw and statutory law, all of the § 3553(a) factors, and his post-sentencing conduct.[1] In light of those considerations, the Court concludes that Defendant has not shown that the § 3553(a) factors weigh in favor of release. The Court's reasons for reaching this conclusion include (1) the violent and significant nature of the instant offenses, and (2) his criminal history.

As to the "extraordinary and compelling" reason standard, the Court acknowledges that the First Step Act eliminated the "stacking" of sentences pursuant to § 924(c), and as a result, if Defendant plead only to the same two charges today, he would be subject to a lower mandatory minimum. An outline of the facts of the instant offenses set forth herein makes it clear why no relief is warranted. Additionally, the Court notes that Congress explicitly did not make the First Step Act's change to § 924(c) retroactive.[2]  Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5222 (2018) ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*." (emphasis added)). The Fourth Circuit has held that the First Step Act's change to § 924(c) sentences "can constitute

---

[1] The Court has considered in its analysis each of the issues raised in Defendant's filings, including (1) the First Step Act's elimination of "stacking" sentences; (2) the impact and spread of COVID-19 at his facility; (3) the way that the BOP is managing the pandemic at its facilities; (4) his sickle cell trait diagnosis in light of COVID-19; and (5) his rehabilitation efforts including educational and programming courses.

[2] The Court recognizes that this change must still be considered when evaluating a motion for compassionate release. *See McCoy*, 981 F.3d at 284.

an 'extraordinary and compelling' reason for relief." *McCoy* at 285-88. *McCoy* makes it clear that district courts have the discretion to reduce § 924(c) stacking sentences. The Fourth Circuit stated that district courts are "empowered…to consider any extraordinary and compelling reason for release that a defendant might raise." *Id*. at 284 (quoting *Zullo*, 976 F.3d at 230). Courts have "discretion to reduce terms of imprisonment that are based on sentencing ranges subsequently lowered by the Sentencing Commission." *Id*. at 287. Courts are to "conduct individualized inquires" and individualized reviews of motions for compassionate release. *Id*. at 289. In light of *McCoy*, and for purposes of Defendant's motion, the Court will assume that Defendant has established "extraordinary and compelling" circumstances.[3]

However, based on its analysis and balancing of the § 3553(a) factors, the Court concludes that Defendant's motion should be denied. The Court has balanced those factors in light of the compassionate release issues not in play at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring). In conjunction with the § 3553(a) factors, it is appropriate to highlight the facts surrounding Defendant's instant offenses. Paragraphs 16 – 27 of the PSR detail Defendant's offense conduct—a string of armed robberies that spanned several weeks. The PSR also includes several paragraphs of "relevant conduct." PSR ¶¶ 29-32. Defendant's crimes were so numerous that the PSR implemented a one-page chart to organize his offenses. PSR

---

[3] The Court also notes that the BOP began administering COVID-19 vaccines to inmates and staff in January 2021. According to BOP records, approximately 205,887 doses have been administered as of August 4, 2021. Specifically, Lewisburg USP (Defendant's facility) has fully inoculated 216 staff members and 573 inmates.

¶ 45. The string of armed robberies began on June 16, 2005 and continued until July 9, 2005. PSR ¶¶ 16, 23. The Court will not restate all the facts here but will highlight some of the more egregious details. Defendant's conduct in connection with the robberies was clearly violent.

The offense conduct involves four separate armed robberies. First, on June 16, 2005, Defendant participated in the armed robbery of Williams Travel Center. PSR ¶ 16. During the robbery, Defendant "pointed a gun at [a customer] and demanded his wallet." *Id.* He also "fired one shot into the ceiling as he held [the customer] over the counter." *Id.* After taking $250 in cash, Defendant and another participant fled the scene. *Id.* Approximately 15 minutes later, Defendant participated in a second armed robbery. PSR ¶ 17. Like the first robbery, Defendant "pointed the firearm at [a store clerk], pushed her behind the counter, and demanded money." PSR ¶ 18. After taking $250 in cash, lottery tickets and cigarettes, the participants again fled on foot. *Id.* Approximately two and a half weeks later, Defendant participated in a third armed robbery. PSR ¶ 19. Like the first two, Defendant "put a gun to [a store clerk's] head and sat her up on the counter." *Id.* Another participant "shot [another store clerk] in the right shoulder." *Id.* When a customer walked into the store during the robbery, Defendant "jumped across the counter, put a gun to [his] head, and took him to the back of the store" where he stole his wallet. PSR ¶ 20. Defendant then forced the customer to lay on the ground and fired a shot towards the floor near the customer, "the bullet ricocheted off the floor and struck [the customer's] pant leg." *Id.* A second customer was also shot in the left foot, although it is unclear which

participant fired the shot. PSR ¶ 21. Approximately $3,400 in cash and two cartons of cigarettes were stolen during that robbery. PSR ¶ 22. Five days later, Defendant participated in a fourth armed robbery. PSR ¶ 23. Again, Defendant approached the store clerk, "pointed a pistol at her and told her to open the register." *Id.* At the same time, the other participant "shot another clerk" in the upper torso/shoulder. PSR ¶¶ 23, 25. Defendant then noticed additional store employees and "placed a gun to [one employee's] head and told him to open the safe." PSR ¶ 24. Defendant was not arrested until October 10, 2005, when he was found in Fairburn, Georgia. PSR ¶ 36.

In sum, Defendant participated in a violent string of armed robberies where he and other participants brandished firearms, shot victims, and robbed them. This conduct was egregious, serious, and significant, and demonstrates Defendant's disregard for the safety of others. After a review of the facts of the instant offenses, the Court concludes that "the nature and circumstances of the offense" weigh against release.

As to "the history and characteristics of the defendant," the Court acknowledges that Defendant was relatively young at the time of his offenses. But, he had several prior convictions for a variety of criminal conduct, PSR ¶¶ 54, 59, 61, and his probation was revoked in 2003 for violating several conditions, PSR ¶ 59. The Court also notes that Defendant's offense conduct was not an insolated incident. The charged conducted occurred over three weeks and was separated by days and weeks at a time. The other conduct charted in Paragraph 45 of the PSR spanned over approximately one month. Defendant's continued and repetitive criminal activity

demonstrates his disrespect for the law and his propensity to commit violent crime. In light of that conduct, the Court concludes that Defendant's history and characteristics also weigh against release.

The Court also concludes that §§ 3553(a)(2)(A)-(C) weigh against release for similar reasons. The circumstances of the instant offenses, which spanned several weeks, demonstrate Defendant's disregard for the law and his propensity to commit acts of violence. As stated above, Defendant's conduct during the armed robberies was egregious and violent, and the sentence imposed was and is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and to afford adequate deterrence.

The Court next turns to §§ 3553(a)(3)-(6)—the kinds of sentences available, the Guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. Defendant pled guilty to two counts of Brandishing a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c). He pled guilty knowing those counts carried a statutory minimum sentence of 32 years. PSR ¶¶ 95, 96. On the Government's motion, ECF No. 47, the Court imposed 22 years and 10 months' imprisonment, a sentence nine years below the mandatory minimum, ECF No. 59.

The Court acknowledges that the First Step Act eliminated the "stacking" of sentences pursuant to § 924(c), and as a result, if Defendant only pled to the same two charges today, he would be subject to a lower mandatory minimum. Defendant asserts that if he were sentenced under current law "his current sentence would be

dramatically reduced." ECF No. 101 at 3. This Court concludes otherwise. It is clear that the Government sought a significant sentence against Defendant, and the § 924(c) sentences were the way to accomplish that in light of the significant violent conduct involved in the crimes committed by Defendant. The Court has considered a recalculation of the Guidelines under current law, and notes that although the First Step Act lowered the minimum sentences on § 924(c) convictions, the maximum is still up to Life. Due to the severity of the instant offenses, as outlined, a minimum sentence under current law would not be appropriate. There is no basis to conclude that a lesser or lower sentence would have been imposed by this court in light of Defendant's violent federal offense conduct. *See* ECF No. 104 at 8-9. The Court has given careful consideration to this issue and §§ 3553(a)(3)-(6) and concludes that those factors do not weigh in favor of release.

As noted, in *McCoy*, the Fourth Circuit indicated that district courts should not grant release based solely on the First Step Act's change to § 924(c) but should instead "conduct individualized inquires" and consider individual factors specific to the defendant. 981 F.3d at 288. The Court has followed that guidance and has based its decision on the individualized considerations outlined herein.

As to the remaining factors, the Court acknowledges that the record reflects that Defendant has made rehabilitative efforts while incarcerated. However, that factor, balanced against the factors above, does not warrant release. In sum, Defendant committed serious, violent crimes that demonstrate his disrespect for the law and his disregard for the safety of others. His rehabilitative efforts do not

outweigh the repetitive violence and contempt for the law that he exhibited before his incarceration. Therefore, the Court's § 3553(a) analysis counsels that Defendant must serve the remainder of the sentence imposed.

In light of the seriousness and violent nature of the instant offenses, and the need for the sentence imposed, the Court concludes that the § 3553(a) factors weigh against release. Accordingly, a sentence reduction is not appropriate and Defendant's motion for compassionate release, ECF No. 101, is **DENIED**.[4][5]

**IT IS SO ORDERED.**

_s/ Terry L. Wooten_
Terry L. Wooten
Senior United States District Judge

August 4, 2021
Columbia, South Carolina

---

[4] To the extent he seeks an order directing the BOP to grant him an early release to home confinement pursuant to the CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), the Court does not have discretion to issue such an order. _See, e.g._, _United States v. Hendrix_, No. 1:10-cr-00067-MR-WCM-2, 2020 WL 2319698, at *1 (W.D.N.C. May 11, 2020) ("The discretion to release a prisoner to home confinement lies solely with the Attorney General. The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this." (citations omitted)).

[5] The Court has given careful and full consideration to the Fourth Circuit's recent per curiam opinion in _United States v. Kibble_, 992 F.3d 326 (4th Cir. 2021), including the concurring opinions, and has applied those standards in considering this motion. It has also reviewed the Fourth Circuit's recent decision in _United States v. High_, 2021 WL 1823280 (4th Cir. May 7, 2021) and has similarly applied those standards.